IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5 :21-MC-21-BM

| | |
|---|---|
| SAVVY DOG SYSTEMS, LLC and POM OF PENNSYLVANIA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC, <br><br> Defendants. | **NON-PARTY BANILLA GAMES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH** |

# TABLE OF CONTENTS

I.     NATURE OF THE CASE ............................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................................... 1

III.   ARGUMENT ............................................................................................................ 3

     A.  The Federal Rules Protect Non-Parties from Burdensome Discovery. ................. 4

     B.  The Subpoena Imposes an Undue Burden Because It Seeks Irrelevant
         Information. ............................................................................................................ 4

     C.  The Subpoena Imposes an Undue Burden To The Extent It Seeks
         Information That Plaintiffs Should Obtain From Other Sources. ........................... 9

IV.    CONCLUSION ........................................................................................................ 10

## I. NATURE OF THE CASE

Banilla Games, Inc. ("Banilla") moves to quash a Subpoena to Testify at a Deposition in a Civil Action (Ex. A, the "Subpoena") served upon it by plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Plaintiffs"). Plaintiffs served the Subpoena in connection with a patent invalidity action pending in the U.S. District Court for the Middle District of Pennsylvania. *See generally Savvy Dog Sys., Inc. v. Pennsylvania Coin, LLC*, No. 3:19-cv-01470-JPW (M.D. Pa. Aug. 23, 2019) (the "Pennsylvania Action"). Banilla, which is not a party to the Pennsylvania Action, should not have to endure the unnecessary and undue burden of preparing one or more corporate designees on 17 separate topics, all of which are irrelevant to the sole claim in the Pennsylvania Action: the invalidity of Plaintiff Savvy Dog Systems, LLC's U.S. Patent No. 7,736,223 (the "'223 patent"). The Subpoena is simply Plaintiffs' attempt to harass a non-party competitor and to discover Banilla's confidential and sensitive information under the guise of third-party discovery.

## II. STATEMENT OF FACTS

Banilla is a North Carolina company, founded in 2014, with its headquarters in Greenville, North Carolina. Banilla designs, develops, and distributes various types of amusement games. Plaintiffs are affiliates of Pace-O-Matic, Inc., a competitor of Banilla that also develops amusement games. In 2019, Plaintiffs commenced the Pennsylvania Action against defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "Defendants") alleging that Defendants' sale of certain games manufactured by Banilla infringed the '223 patent. *See* Compl., Pennsylvania Action (ECF No. 1), Dkt. No. 1, Complaint. Plaintiffs have since told the Pennsylvania court that they no longer contend that Defendants' sale of Banilla games infringe the '223 patent and have withdrawn their infringement claim. *See* Pls' Final Disclosure of Asserted Claims & Infringement Contentions, Pennsylvania Action, (ECF No. 116). Thus, Banilla's

products are no longer at issue in the Pennsylvania Action and have nothing to do with the sole remaining claim in the action—Defendants' counterclaim seeking a declaration that the '223 patent is invalid.

Nor does Defendants' defense of the Pennsylvania Case implicate Banilla's products. For example, though Defendants contend that the '223 patent is invalid, their invalidity contentions do not implicate Banilla. The '223 patent issued in 2010 from an application filed in 2006—years prior to Banilla's incorporation. None of the prior art alleged to invalidate the '223 patent is associated in any way with Banilla. Likewise, neither Banilla nor its employees are alleged to have been involved with the purported invention of the claims of the '223 patent. *See* Defs' Final Invalidity Contentions, Pennsylvania Action, (ECF No. 120). Further, Defendants have not identified either Banilla or its employees as having discoverable information that Defendants may use to support their declaratory judgment invalidity claim. *See* Excerpt from Defs' Initial Disclosures, Pennsylvania Action (ECF No. 141). In fact, Plaintiffs themselves have not identified Banilla as having discoverable information that they may rely on at trial. *See* Plaintiffs' Third Supplemental Initial Disclosures, Ex. B.

On July 13, 2021, notwithstanding Plaintiffs' express acknowledgement that Banilla's products do not practice the '223 patent, Plaintiffs served the Subpoena on Banilla. The Subpoena purports to compel Banilla to produce corporate designee(s) to testify regarding 17 broad topics. These topics cover: (1) communications and agreements between Banilla and Defendants (Topics 1-5, 13); (2) Banilla's communications with other non-parties (Topics 6-8); (3) information regarding the electronic gaming industry and games (Topics 10-12, 15-16); (4) information regarding a patent owned by a non-party and not asserted in the Pennsylvania Action (Topic 9); (5) opinions that Banilla itself obtained from its counsel regarding the '223 patent (Topic 14); and

(6) business that Banilla purportedly "claims" it lost from various entities (Topic No. 17).

## III.     ARGUMENT

The trial in the Pennsylvania Action will involve only one issue: whether Plaintiffs' '223 Patent is valid. The evidence at trial will focus only on the '223 patent—its content, prior art to the patent, and circumstances surrounding the inventorship of the patent. According to Plaintiffs, they may introduce evidence regarding the sales of Plaintiffs' products as purported proof of commercial success of embodiments of the claimed invention of the patent. But, Plaintiffs' sales of their own products have nothing to do with Banilla. This is especially so given that Banilla's products are neither alleged to infringe or embody the claims of the '223 patent nor are they alleged to be prior art to the '223 patent. As a result, Plaintiffs have no legitimate reason to seek discovery from Banilla. A non-party's views, opinions, or communications about the '223 patent, about litigation between Plaintiffs and Defendants, or about the general marketplace for electronic games are not probative of the validity of the '223 patent—the sole issue remaining in the Pennsylvania Action.

Given the irrelevancy of the information sought in the Subpoena, the reason for the Subpoena is plain: Plaintiffs want to burden Banilla—a non-party competitor—with a fishing expedition designed to uncover sensitive information, including Banilla's work product and analysis regarding a patent for potential use is proceedings other than the Pennsylvania Action. To allow discovery into such information flouts the Federal Rules of Civil Procedure. And, to the extent that Plaintiffs want information about Defendants or other non-parties, they should seek (and indeed, are already seeking) that information from those sources directly.

**A.** **The Federal Rules Protect Non-Parties from Burdensome Discovery.**

Federal Rule of Civil Procedure 45 requires parties issuing subpoenas to protect nonparties from undue burden and expense. *See* Fed. R. Civ. P. 45(c)(1) (imposing burden on serving party to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"). A court should quash or modify a subpoena if the information sought is obtainable from another, more convenient source or if a subpoena "requires disclosure of privileged" materials or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A); *accord Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).

"When discovery is sought from nonparties . . . its scope must be limited even more [than for parties]." *Jordan*, 921 F.3d at 189. Nonparties "have a different set of expectations from the parties themselves." *Id.* (cleaned up). Thus, in the context of evaluating a motion to quash, the court should "give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005); *see Jordan*, 921 F.3d at 189 (non-party status entitled to "special weight" deserving of "demanding and sensitive inquiry"). Among the factors that the Court may consider in determining whether there is an undue burden are "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Schaaf*, 233 F.R.D. at 453.

**B.** **The Subpoena Imposes an Undue Burden Because It Seeks Irrelevant Information.**

A subpoena is unduly burdensome where, as here, it seeks information that is not relevant to the underlying action or disproportionate to the needs of the underlying action. *See Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (undue burden category "encompasses situations where the subpoena seeks information irrelevant to the case"); *Jordan*, 921 F.3d at 189 (emphasizing "more demanding variant of the proportionality analysis" applies to undue burden

analysis for subpoena recipient). Here, preparing potentially multiple designees to testify regarding each of the Subpoena topics would be unduly burdensome.

Topics 1-5 and 13 are improper because they seek irrelevant information about non-party Banilla's purported communications with Defendants. Specifically, they seek testimony regarding communications about the Pennsylvania Action (including about issues already decided by the Court, such as claim construction and Plaintiffs' denied motion for entry of judgment) (Topics 1, 5, and 13); competitors and competitors' products (Topic 2); and the '223 patent (Topics 3 and 4). Even if such communications existed, they would have no bearing on whether or not the '223 patent is valid. Neither Banilla's nor Defendants' activities or state of mind are relevant to the Pennsylvania Action. Further, what Banilla (a company did not even exist at the time of the alleged invention of the '223 patent) and Defendants may have said to each other on any topic does not alter the contents of the '223 patent, the contents of the prior art before 2007 (none of which is alleged to include any games of Banilla or Defendants), or the facts surrounding the purported invention claimed in the '223 patent in 2006 (an invention neither Banilla nor Defendants allegedly had any involvement in creating). Indeed, courts routinely recognize that broad discovery requests seeking a parties' communications with non-parties to a lawsuit are irrelevant and disproportionate to the needs of an underlying action. *See Nutritional Biomimetics, LLC v. Empirical Labs Inc.*, Civil Action No. 16-cv-01162-KMT, 2017 WL 6945030, at *4 (D. Colo. Aug. 4, 2017) (quashing subpoena and rejecting as overbroad request for all documents between non-party and party to litigation). The same is true here—what Banilla and Defendants may have said does not alter what

is in the '223 patent or prior art. Thus, the Subpoena topics seeking deposition testimony regarding the same are overbroad.[1]

Topics 6-8, which seek Banilla's communications with non-party prior art inventors— Grant Kowell, a patentee and inventor of a potential piece of prior art, and Donald Fiechter of World Touch Gaming, Inc., the creator of prior art game Nudgemaster—are irrelevant. What these non-parties and Banilla may have discussed does not impact whether the Kowell patent (issued years before Banilla was incorporated) or the Nudgemaster game (created years before Banilla was incorporated) are prior art and does not alter what is in these patents or the '223 patent. It is the latter issue that the jury in Pennsylvania will evaluate. Ultimately, what two non-parties to a litigation communicate about is far from discoverable information that is relevant to a dispute between independent entities. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2007 WL 1521136, at *1-2 (N.D. Ill. May 17, 2007) (emphasizing litigant's "requests for communications between the non-parties is irrelevant to the litigation" and denying motion to compel production of non-parties' "communications with other parties relating to [party], [party]'s patents, and prior art").

Topic 13, which seeks testimony regarding any indemnification agreement with respect to

---

[1] Even assuming that communications between Banilla and Defendants regarding the '223 patent or the Pennsylvania Action existed and had some minimal relevancy, Plaintiffs cannot depose Banilla regarding such communications given these communications are shielded from discovery under the common interest doctrine as Banilla and Defendants had an identical legal interest in invalidating the '223 patent. *See, e.g.*, *B.E. Meyers & Co. v. United States*, 41 Fed. Cl. 729, 734 (Ct. Fed. Cl. 1998) (common interest between defendant and non-party manufacturer of product accused of infringement); *Johnson Elec. N. Am., Inc. v. Mabuchi N. Am. Corp.*, No. 88 CIV. 7377 (JES), 1996 WL 191590, at *3-4 (S.D.N.Y. April 19, 1996) (finding common-interest doctrine applied to plaintiff and third-party where both shared business and legal interests in invalidating defendants' patents). Indeed, Banilla has independently challenged the validity of the '223 patent in separate proceedings before the United States Patent Trial and Appeal Board ("PTAB"). *See* Pennsylvania Action, Dkt. 69-1.

the Pennsylvania Action, is likewise irrelevant to the invalidity of the '223 patent. *Cf. In re Zicam Cold Remedy Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 09-md-2096-PHX-FJM, 2010 WL 4715951, at *1 (D. Ariz. Nov. 15, 2010) (denying motion to compel indemnification information of non-party manufacturer whose products were at issue in litigation). And assuming that there were an indemnification agreement to which Defendants are a party, Plaintiffs should get that information directly from Defendants. *See infra*, § III. C.

Topic 14 is improper because it seeks irrelevant information regarding legal advice that non-party Banilla has received regarding the invalidity of the '223 patent. What a non-party thinks about the '223 patent does not alter its validity.[2] As Plaintiffs well-know, Banilla filed a separate proceeding before the PTAB seeking to invalidate the '223 patent. *See* Pennsylvania Action, Dkt. 69-1. Thus, it appears Plaintiffs are simply seeking to use their litigation with Defendants as a means of discovering, and frustrating, non-party Banilla's legitimate efforts to invalidate the '223 patent in a separate proceeding. That Defendants (distributors of select Banilla games no longer accused of infringement) have sought a declaratory judgment of patent invalidity does not open up Banilla to discovery of Banilla's internal analyses and work product relating to the '223 patent.

Topics 15 and 16, which seek testimony regarding Banilla's view of the electronic gaming market and who may constitute a competitor of Banilla, and Topic 17, which seeks information regarding any business Banilla claims it lost as a result of the electronic amusement games offered and/or sold by various non-parties to the Pennsylvania Action, are likewise irrelevant areas of inquiry. Banilla's games are not alleged to be prior art, nor to practice the claims of the '223 patent. Plaintiffs cannot legitimately argue that market and competitive analytics information from

---

[2] Further, any opinions of counsel received by Banilla implicate the attorney-client privilege. *See Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 457 (N.D. Ill. 1974).

Banilla is relevant to secondary considerations of non-obviousness—factors that may circumstantially support that a claimed invention is not obvious under the prior art. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966) (listing factors). In the Pennsylvania Action, the only secondary consideration Plaintiffs contend is relevant is "commercial success," and then, only with respect to the commercial success of products associated with *Plaintiffs*, not those of Banilla created years after the '223 patent issued. *See* Pls' Sixth Supplemental Responses & Objections to Defs' First Set of Interrogatories at No. 2, Pennsylvania Action (ECF No. 141-3) (Ex. C). Any evidence of supposed commercial success of Plaintiffs' products purportedly embodying the claimed invention would come from Plaintiffs' witnesses, not from a non-party competitor Banilla. Indeed, Plaintiffs recently withdrew subpoenas directed to Defendants' principals, despite initially arguing that they were entitled to take discovery from competitors who do not practice the '223 patent in order to develop evidence of commercial success. *See* Discovery Dispute Letters, Pennsylvania Action (ECF Nos. 140 & 141). Given that Plaintiffs are not pursuing this discovery directly from Defendants, they should not be allowed to pursue the same discovery from a non-party. After all, a party claiming a patent is invalid does not open up an entire industry of non-party competitors to burdensome discovery regarding market views. And Plaintiffs' supposed need to take discovery from non-party Banilla regarding the electronic gaming market is belied by the fact that Plaintiffs have not sought discovery regarding this market from any other companies in the market.

At bottom, permitting a deposition of Banilla would simply open the door for a fishing expedition so that Plaintiffs could inquire into Banilla's business practices, confidential communications, and financial health in the hopes of finding something relevant. This is improper. *See, e.g.*, *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 608 (S.D.N.Y. 1989) (denying

discovery as "pure conjecture" where no factual basis was shown through existing discovery, and would amount to a "walk through" of confidential material "in the hope that something of arguable relevance might turn up."); *see also Ultimate Timing, LLC v. Simms*, No. 3:09-mc-6, 2009 WL 1148056, at *2 (S.D. Ind. Apr. 28, 2009) (quashing subpoena where "breadth of the subpoenas issued does not allow the Magistrate Judge to draw a bright line between that which is relevant to the underlying litigation and that which may be a fishing expedition for other proprietary information"). These concerns regarding using the Subpoena as an improper fishing expedition are heightened here, where, prior to commencement of the Pennsylvania Action, Plaintiffs sent Banilla a letter accusing it of infringing the '223 patent. *See* Jan. 15, 2019 Letter from Plaintiffs' Counsel to Banilla, Pennsylvania Action (ECF No. 70-5) (Ex. D). In such a situation, the Court should be vigilant to ensure that the Subpoena is not being used as a vehicle to obtain information irrelevant to the Pennsylvania Action merely to use in some future lawsuit Plaintiffs hope to bring against Banilla. *See Ultimate Timing*, 2009 WL 1148056, at *2 (cautioning against overly broad subpoena discovery where subpoena recipient was competitor to whom plaintiff had sent cease and desist letter); *see also Farmer v. Senior Home Companions*, No. 1:08-cv-0379, 2009 WL 564193, at *3 (S.D. Ind. Mar. 5, 2009) (quashing subpoena because "it is improper to use third-party discovery in the instant litigation as a vehicle for Plaintiff to pursue other potential claims").

### C. The Subpoena Imposes an Undue Burden To The Extent It Seeks Information That Plaintiffs Should Obtain From Other Sources.

Topics 9-12 of the Subpoena seek information from Banilla that Plaintiffs should obtain from a less burdensome source. Topic 9 seeks information regarding conception, reduction to practice or constructive reduction to practice of any claim of U.S. Patent No. 8,491,369—a patent issued to non-party Grant Kowell in 2013 before Banilla existed. Mr. Kowell was never employed by Banilla, and Banilla has nothing to do with his patent or the underlying conception or reduction

to practice. Thus, insofar as Plaintiffs purport to need additional discovery regarding Mr. Kowell's patent, Plaintiffs should (and have already sought to) get such discovery from Mr. Kowell himself. *See* Notice of Intent to Serve Subpoena on G. Kowell, Pennsylvania Action (ECF No. 138).

Similarly, with respect to Topic 12, which seeks information regarding features of Nudgemaster, Plaintiffs should obtain this information from the inventor of Nudgemaster— Donald Fiechter of World Touch Gaming, Inc. Plaintiffs will have the opportunity to do so given they have served subpoenas on both Mr. Fiechter and World Touch Gaming, Inc. *See* Notice of Intent to Serve Subpoenas, Pennsylvania Action (ECF No. 130) . The Nudgemaster game existed years before Banilla existed. Mr. Fiechter never worked at Banilla, and Banilla is not an affiliate of independent entity World Touch Gaming. Thus, there is no reason why Banilla could be expected to have better information regarding Nudgemaster than the actual inventor of the game.

Insofar as the information sought in Topics 9 and 12 has any relevance to the Pennsylvania Action, Plaintiffs can and should directly obtain it from individuals most knowledgeable about such information, not burden non-party Banilla with educating itself. *See Jordan*, 921 F.3d at 189 ("[P]arty should be able to explain why it cannot obtain the same information, or comparable information . . . from . . . third parties that would be more logical targets for the subpoena.").

Topics 10 and 11 seek identification of prior art to the '223 patent. But, it is up to the parties to the Pennsylvania Action to identify such prior art, not a non-party like Banilla. No Banilla product is alleged to be prior art, and, thus, there is no reason why Banilla should be deposed regarding patents, products, or publications that it did not create. Banilla's opinions regarding prior art are irrelevant given that what Banilla thinks may constitute prior art to the '223 patent does not render a patent, game, or publication a piece of prior art.

## IV. CONCLUSION

For those reasons, the Court should quash the Subpoena.

Respectfully submitted, this the 6th of August, 2021.

Joseph A. Schouten
N.C. State Bar I.D. No.:  39430
email:  jas@wardandsmith.com
Christopher S. Edwards
N.C. State Bar I.D. No.:  48385
email:  csedwards@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC  27636-3009
Telephone:  919.277.9100
Facsimile:  919.277.9177
*Attorneys for Banilla Games, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing NON-PARTY BANILLA GAMES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH via email and by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail addressed to the following persons at the following addresses which are the last addresses known to me:

John L. North, Esq.
Hill, Kertscher & Wharton, LLP
3625 Cumberland Boulevard, Suite 1050
Atlanta, GA 30339
jnl@hkw-law.com

John V. Gorman
Kenneth J. Davis
Amy M. Dudash
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
john.gorman@morganlewis.com
kenneth.davis@morganlewis.com
amy.dudash@morganlewis.com

This the 6th day of August, 2021

Christopher S. Edwards
N.C. State Bar I.D. No.: 48385
email: csedwards@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone: 919.277.9100
Facsimile: 919.277.9177
*Attorneys for Banilla Games, Inc.*