# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

|  |  |
|---|---|
| SAVVY DOG SYSTEMS, LLC, a Wyoming limited liability company, and POM OF PENNSYLVANIA, LLC a Wyoming limited liability company,<br><br>        Plaintiffs,<br><br>    v.<br><br>PENNSYLVANIA COIN, LLC, a Pennsylvania limited liability company, and PA COIN HOLDINGS, LLC, a Pennsylvania limited liability company,<br><br>        Defendants. | Civil Action No. 5:21-MC-21-BM |

**<u>PLAINTIFFS SAVVY DOG SYSTEMS, LLC AND POM OF PENNSYLVANIA, LLC'S COMBINED RESPONSE TO NON-PARTY BANILLA GAMES, INC.'S MOTION TO QUASH, AND MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENT SUBPOENA AGAINST BANILLA GAMES, INC.</u>**

Pursuant to Local Civil Rules 7.1 and 7.2, Plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (together "Savvy Dog" or "Plaintiffs") hereby respond to Non-Party Banilla Games, Inc's ("Banilla") Motion to Quash (Dkt. 1 ("Motion to Quash")), which is directed to a subpoena calling for the testimony of Banilla (Dkt. 2-1 (the "Deposition Subpoena")). Savvy Dog also submits this memorandum in support of its Motion to Enforce Document Subpoena filed herewith, which is directed to a subpoena *duces tecum* requesting the production of Banilla documents on topics mirroring the topics in the Deposition Subpoena (Exhibit A (the "Document Subpoena")).

For the reasons set forth below, and mindful of the protections given to third parties in connection with Rule 45 subpoenas, Savvy Dog respectfully submits that the documents and testimony it seeks are relevant to the issues in the underlying case, and Banilla has failed to show that providing the requested discovery would be unduly burdensome to Banilla or protected by the common interest doctrine. Banilla's cases fail to support a contrary conclusion.

Nor is there a basis for Banilla's repeated contention that Plaintiffs' subpoenas are nothing more than a "fishing expedition" aimed at Banilla's "business practices, confidential communication and financial health." (Dkt. 2, at 8; *see also id.* at 1, 3). The narrowed topics, as discussed below, simply do not call for such business information and, in any event, Banilla's concerns are addressed by the protective order in place in the Pennsylvania Action that is specifically directed to discovery from third parties, including Banilla. (*See* Pennsylvania Action, at Dkt. 104-1, 105).

## I.  SUMMARY OF THE NATURE OF THE CASE

The above-styled patent case, *Savvy Dog Sys., Inc. v. Pennsylvania Coin, LLC*, No. 3:19-cv-01470-JPW, is pending in the Middle District of Pennsylvania (the "Pennsylvania Action").

The issues remaining to be tried relate to Defendants Pennsylvania Coin, LLC and PA Coin Holdings, LLC's (together "Defendants") claims that the asserted U.S. Patent No. 7,736,223 (the "'223 Patent") is invalid.

Savvy Dog issued the Deposition Subpoena and Document Subpoena on July 13, 2021. (*See* Dkt. 2-1 and Ex. A). Counsel for Defendants accepted service on behalf of Banilla on July 21, 2021. Also on behalf of Banilla, counsel for Defendants sent a letter objecting and responding to the Document Subpoena on August 2, 2021. (Exhibit B, Banilla's Objections and Response to Document Subpoena). Further on behalf of Banilla, counsel for Defendants engaged in a meet and confer regarding the subpoenas on August 5, 2021. Counsel for Savvy Dog offered to narrow the scope of the subpoenas, which Banilla ignores in its memorandum. Banilla's bottom line position was that it should not have to produce <u>any</u> documents or a witness to testify on <u>any</u> topics regardless of scope.

Banilla subsequently engaged North Carolina counsel to file the Motion to Quash on August 6, 2021. (Dkt. 1). Because the Motion to Quash only addresses the Deposition Subpoena, Savvy Dog files herewith its Motion to Compel the Document Subpoena putting the overlapping issues relating to both the Deposition Subpoena and the Documents Subpoena before this Court.[1]

## II.    CONCISE STATEMENT OF THE FACTS PERTINENT TO THE SUBPOENAS

Banilla is no stranger to Savvy Dog, Defendants, or the Pennsylvania Action. Banilla states in its Memorandum in Support of its Motion to Quash that "Banilla designs, develops, and distributes various types of amusement games. Plaintiffs are affiliates of Pace-O-Matic, Inc., a competitor of Banilla that also develops amusement games." (Dkt. 2, at 1). Banilla also notes that

---

[1] Banilla's August 2 objections letter consisted of page after page of boilerplate objections. (*See* Ex. B). Savvy Dog assumes that Banilla raised the issues it thinks most important in the Motion to Quash, and addresses these issues herein.

it manufactured the games that were the subject of Savvy Dog's infringement allegations. (*Id*.). Further, as noted above, Defendants' counsel initially represented Banilla in connection with the subpoenas. Finally, while Banilla raises the fact that it filed a petition for inter partes review with the Patent and Trademark Office in an effort to invalidate the '223 Patent (Dkt. 2, at 6 n.1), Banilla fails to inform the Court that the petition was rejected. (*See* Pennsylvania Action, at Dkt. 106-1).

Savvy Dog seeks documents and testimony from Banilla that are pertinent to the issues Defendants have raised regarding the validity of the '223 Patent.[2] As noted, Savvy Dog offered in good faith during the meet and confer to narrow the document requests and deposition topics. Notwithstanding Banilla's refusal to resolve this discovery dispute without the Court's intervention, Savvy Dog further proposes narrowing the deposition topics as follows, consistent with the suggestion by the Court of Appeals for the Fourth Circuit that it is appropriate to modify requests in connection with a response to a motion to quash. *Cook v. Howard*, 484 F. App'x 805, 813 (4th Cir. 2012).[3] Savvy Dog indicates below where deposition topics have been withdrawn, maintained, or modified.

1. Withdrawn.

2. Withdrawn.

3. Maintained: "Your communications with Defendants (including their counsel, Morgan Lewis) regarding the validity or alleged invalidity of the 223 Patent."

4. Maintained: "Your communications with Defendants (including their counsel,

---

[2] To the extent Banilla points out that Plaintiffs' disclosures have not listed Banilla (Dkt. 2, at 2), this argument misses the point – the discovery Plaintiffs seek here will determine whether Banilla documents and witnesses should be listed in the disclosures.

[3] As noted above, the document requests mirror the deposition topics, and Savvy Dog will likewise narrow the document requests consistent with the narrowing of the deposition topics.

Morgan Lewis) regarding who if anyone other than Michael Pace contributed to the invention of one or more claims of the 223 Patent."

5.      Withdrawn.

6.      Modified to drop subtopic (1): "Your communications with Grant "Fuzzy" Kowell regarding one or more of the following topics: ~~(1) the above-styled litigation;~~ (2) the validity or alleged invalidity of the 223 Patent; or (3) who if anyone other than Michael Pace contributed to the invention of one or more claims of the 223 Patent."

7.      Modified to drop subtopic (1): "Your communications with Donald J. Feichter and/or World Touch Gaming, Inc. regarding one or more of the following topics: ~~(1) the above-styled litigation;~~ (2) the validity or alleged invalidity of the 223 Patent; or (3) who if anyone other than Michael Pace contributed to the invention of one or more claims of the 223 Patent."

8.      Modified to drop subtopic (1): "Your communications with Jeff Mayle regarding one or more of the following topics: ~~(1) the above-styled litigation;~~ (2) the validity or alleged invalidity of the 223 Patent; or (3) who if anyone other than Michael Pace contributed to the invention of one or more claims of the 223 Patent."

9.      Withdrawn.

10.     Maintained: "Any electronic amusement game system that included a Preview Display Feature prior to July 1, 2006."[4]

---

[4] Document Subpoena Request No. 10 similarly seeks production of "*[d]ocuments relating to* any electronic amusement game system that included a Preview Display Feature prior to July 1, 2006, including documents relating to communications regarding such system." (Ex. A (emphasis added)).

11.     Maintained: "Any electronic amusement game system that included a Testing Feature prior to July 1, 2006."[5]

12.     Withdrawn.

13.     Withdrawn.

14.     Withdrawn.

15.     Modified to narrow scope: "Whether you need a Preview Display feature and/or testing Feature to compete in the market for electronic amusement games."

16.     Withdrawn.

17.     Withdrawn.

For the reasons set forth below in Section III, Savvy Dog respectfully submits that these requests fall within the scope of proper discovery and are not unduly burdensome to Banilla.

**III.     ARGUMENT AND CITATION OF AUTHORITY**

Banilla cites the Fourth Circuit decision in *Virginia Department of Corrections*, 921 F.3d 180 (4th Cir. 2019), *cert. denied,* 140 S. Ct. 672, 205 L. Ed. 2d 438 (2019), which sets forth a number of the factors that a district court should weigh when considering a motion to quash, albeit in that case the facts were quite different – the issues involved a Mississippi death row inmate's subpoena to the Virginia Department of Corrections regarding Virginia's execution practices. 921 F.3d at 184. The bottom line is that the Court must determine whether the burden of the discovery outweighs its likely benefit; the subpoenaing party must make a stronger showing as a third-party is involved; and the determination should be made regarding whether the information can be obtained more readily from some other source. *Id*. at 189-190. It should be noted that this standard

---

[5] Document Subpoena Request No. 11 similarly seeks production of "*[d]ocuments relating to* any electronic amusement game system that included a Testing Feature prior to July 1, 2006, including documents relating to communications regarding such system." (Ex. A (emphasis added)).

has been articulated in the context where the "nonparties are 'strangers' to the litigation," *id*. at 189, but, as noted above, Banilla is no stranger to this case.

Banilla's Motion to Quash primarily argues that the deposition topics are irrelevant to the invalidity issues or the information should be more readily obtained from another source. Notably, Banilla provides absolutely no factual basis to support a showing that it would be unduly burdensome to prepare a witness to address the topics or to gather and produce the requested documents. *See Vaughan Furniture Co. Inc. v. Featureline Mfg., Inc.*, 156 F.R.D. 123, 125 (M.D.N.C. 1994) (denying motion to quash for failure to detail the specific burden imposed by the subpoena: "As to the burdensomeness claim, non-party Cranford Silk did not support its objection or motion with any showing, such as through affidavits, which sets out in detail the expenses which would be involved, as it was required to do. Therefore, this objection is overruled.") (internal citation omitted); *In re: Monitronics Int'l, Inc.*, No. MDL 1:13-MD-2493, 2014 WL 12623046, at *4 (N.D.W. Va. June 19, 2014) ("When a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing how production would be burdensome.").

For instance, Banilla provides no facts to support any suggestion that it would be burdensome to prepare a witness to address the topics related to communications – Banilla does not even commit to whether such communications have taken place. Needless to say, if there were few or no such communications, it would <u>not</u> be burdensome to prepare a witness to address them and it would <u>not</u> be burdensome to collect any related written communications.

Savvy Dog shows below why the narrowed topics call for information relevant to the invalidity issues and cannot be more readily obtained from another witness with superior knowledge of the issues. As noted, the validity issues are at the front and center of the case and

7

thus are highly relevant.

1. <u>Communications with Defendants Regarding the '223 Patent (Topics 3 and 4)</u>. Topics 3 and 4 specifically call for communications regarding the validity or alleged invalidity of the '223 Patent. While Banilla argues that even if such communications existed they would have no bearing on the validity of the '223 Patent (Dkt. 2, at 5), that plainly is <u>not</u> the case. If, for instance, such communications reflected an acknowledgement by Defendants that the '223 Patent is valid in light of the prior art, or that the prior art is otherwise distinguishable or compelling from a validity standpoint, such could be admissible as an admission by Defendants that is contrary to the invalidity claims they now pursue.[6] Furthermore, the case cited by Banilla, *Nutritional Biomimetics, LLC v. Empirical Labs Inc.*, No. 16-CV-01162-KMT, 2017 WL 6945030 (D. Colo. Aug. 4, 2017), does not support Banilla's overreaching position. In *Nutritional Biomimetics*, the court <u>denied</u> the motion to quash with respect to the requests for documents with a non-party that were germane to the plaintiff's claims. *Id*. at *3-4. The court only granted the motion to quash with respect to the requests that called for trade secret information unrelated to the issues in the case, which is not the case here for Topics 3 and 4. *Id.*

Banilla also suggests that any such communications would be protected from discovery by the common interest doctrine. (Dkt. 2, at 6 n.1). But Banilla has not provided the factual predicates necessary to establish such a claim. In the Fourth Circuit, for the common interest privilege to apply the proponent of the privilege must show (1) a "common interest about a legal

---

[6] While Savvy Dog sought to depose Defendants' principals regarding these same communications, the parties reached a compromise that in no way was a concession that Savvy Dog could not also seek such documents from Banilla. (Exhibit C, July 16, 2021 Letter Agreement re Defendants' depositions). Indeed, as noted herein, Banilla plainly has superior knowledge on some of these topics than Defendants, which label themselves as simply distributors. (*See* Pennsylvania Action, at Dkt. 141, p. 2).

matter"; and (2) "some form of joint strategy." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005). Banilla bears the "burden of showing that the common interest rule applie[s]," and Banilla falls far short of meeting its burden. *Duke Energy*, 2012 WL 1565228, at *16. Importantly, "[t]he privilege arises out of the need for a common [legal] defense, as opposed merely to a common problem" or business interests. *Medcom Holding Co v. Baxter Travenol Labs.*, 689 F. Supp. 841, 845 (N.D. Il. 1988). Thus, the asserted common interest must be "identical, not similar, and be legal, not solely commercial." *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996). Mere cooperation is not enough. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 341. Moreover, although a written agreement is not required, "mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed," nor is a confidentiality agreement alone enough. *Hunton & Williams v. United States Dep't of Justice*, 590 F.3d 272, 285 (4th Cir. 2010); *see also Am. Mgmt. Servs. v. Dep't of the Army*, 703 F.3d 724, 733 (4th Cir. 2013) (There must "be an agreement or a meeting of the minds…."). Banilla has failed to show it and the Defendants share an identical legal interest nor has Banilla provided any evidence that it and Defendants had a "meeting of the minds" regarding a joint defense.[7] Accordingly, the common interest privilege does not apply to the communications sought by Topics 3 and 4.

  2. <u>Communications with Alleged Unnamed Co-Inventors (Topics 6-8)</u>. The individuals named in Topics 6-8 all were identified by Defendants in their Final Invalidity Contentions as potential unnamed co-inventors of the '223 Patent. And the topics now have been

---

[7] Even if, *arguendo*, the common interest privilege applied to certain of Banilla's documents, the privilege does not permit Banilla to simply withhold documents. Banilla must at least provide a privilege log that provides sufficient information for the parties and the Court to evaluate whether the privilege applies to the withheld documents.

narrowed specifically to communications regarding the invalidity claims, which includes inventorship issues. While Banilla argues that any such communications would be irrelevant (Dkt. 2, at 6), they potentially could contain information that undercuts Defendants' invalidity argument, including the inventorship arguments. The case cited by Banilla, *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2007 WL 1521136 (N.D. Ill. May 17, 2007), further supports the production of these documents. In *Trading Technologies*, the court only denied the motion to compel because the defendant had represented that all responsive documents had been produced, which is not the case here. *Id*. at *2.

Banilla may have information regarding these communications that the witnesses do not recall or have not maintained. Also, at least one of these witnesses has shown a lack of cooperation at least in the scheduling of the deposition.

3. <u>Key Features in Prior Art (Topics 10-11)</u>. Two of the key features of novelty of the '223 Patent are the Preview and Testing features. Topics 10 and 11 request testimony regarding Banilla's knowledge of any electronic amusement games with these features before the critical novelty date in 2006. This information is directly relevant to the invalidity issues. Even testimony from Banilla that it is aware of no such games with these features prior to 2006 would be highly probative of Savvy Dog's position that there were no games with these two features prior to the '223 Patent. This would be weighty from the mouth of a major industry player and Savvy Dog competitor.

Banilla's arguments do not stand up under scrutiny. The fact that Banilla was not formed until after 2006 does not negate the possibility that it or its principals and employees gained knowledge regarding what features were and were not in the electronic amusement games in and before 2006, and Plaintiffs are entitled to explore what knowledge Banilla possesses. The fact

that Savvy Dog can ask other third parties regarding the same topics likewise does not negate the potential importance to a jury regarding the perspective of a major industry player on this topic. Finally, while Banilla's opinions on the prior art issues may or may not be relevant, any facts in its possession regarding these topics plainly is relevant.

4.     <u>Importance of the Preview Feature (Topic 15)</u>.  Banilla acknowledges that the commercial success of Savvy Dog's product may be relevant to what are known as secondary indicia of non-obviousness. (Dkt. 2, at 7-8). Banilla's perspective, as an admitted major industry player, on the topic of the importance of the Preview feature would be probative to the commercial success issue. Indeed, Banilla's perspective is arguably superior to that of Defendants, which simply purchased Banilla's products. Defendants no doubt would argue that any success of the Savvy Dog product relates to features other than the Preview feature – any Banilla testimony regarding the importance of a Preview feature would weigh against such arguments by Defendants.

Savvy Dog has withdrawn any topics that even arguably call for Banilla's confidential business information. The remaining, narrowed Topic 15 simply seeks factual information from an industry player regarding the Preview feature that would require no confidential financial information or any other proprietary information. Banilla is also able to take advantage of the protective order entered in the Pennsylvania Action specifically for third-party discovery, including discovery from Banilla, if it has any legitimate confidentiality concerns. (*See* Pennsylvania Action, at Dkt. 104-1, 105).

**IV.     CONCLUSION**

For these reasons, Savvy Dog respectfully requests that the Motion to Quash be denied and its Motion to Compel Document Subpoena be granted.

11

Date: August 20, 2021

Respectfully submitted,

*/s/ Minnie Kim*
WOMBLE BOND DICKINSON (US) LLP
John F. Morrow, Jr. (N.C. Bar No. 23382)
One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-721-3600
John.Morrow@wbd-us.com

Minnie Kim (N.C. Bar No. 41678)
301 S. College Street, Suite 3500
Charlotte, NC 28202
Telephone: 704-331-4921
Minnie.Kim@wbd-us.com

OF COUNSEL:

*/s/ Steven G. Hill*
Steven G. Hill, GA Bar No. 354658
John L. North, GA Bar No. 545580
Martha L. Decker, GA Bar No. 420867
Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339
Telephone: (770) 953-0995
sgh@hkw-law.com
jln@hkw-law.com
md@hkw-law.com

*Counsel for Plaintiffs Savvy Dog Systems, LLC and
POM of Pennsylvania, LLC*

12

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented to accept service by electronic means.

Date: August 20, 2021          */s/ Minnie Kim*
Minnie Kim