# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

**Civil Action No. 5:21-MC-21-BM**

SAVVY DOG SYSTEMS, LLC and POM OF PENNSYLVANIA, LLC,

    Plaintiffs,

    v.

PENNSYLVANIA COIN, LLC, and PA COIN HOLDINGS, LLC,

    Defendants.

**NON-PARTY
BANILLA GAMES, INC.'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL
DOCUMENT SUBPOENA**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   DESPITE BANILLA'S LACK OF RELEVANCE TO THE LITIGATION, PLAINTIFFS CONTINUE TO HARASS BANILLA WITH BURDENSOME DISCOVERY.............................................................................................................. 2

III.  THIRD PARTY BANILLA SHOULD BE SHIELDED FROM IRRELEVANT, BURDENSOME, AND DISPROPORTIONATE DISCOVERY. .................................. 3

      A.    Plaintiffs' Abandonment of Efforts to Obtain Party Discovery Forecloses the Relief Plaintiffs Seek With Respect to Topics 2 and 3. ................................... 4

      B.    Plaintiffs' Conclusory Assertions Fail to Undermine that Documents Regarding Topics 2 and 3 are Protected by the Common Interest Privilege. ........ 6

      C.    The Court Should Reject Plaintiffs' Efforts to Discover Inadmissible Hearsay Through Topics 6-8. .................................................................................. 7

      D.    The Court Should Reject Plaintiffs' Efforts to Discover Irrelevant and Inadmissible Information in Response to Topics 10-11. ....................................... 8

      E.    The Court Should Not Compel Banilla to Provide Expert Testimony and Legal Analysis In Order To Respond to Topic 15. ............................................... 10

IV.   CONCLUSION................................................................................................... 11

## I.  INTRODUCTION

Dissatisfied with its failed bid to assert claims against distributors of products made by non-party Banilla Games, Inc. ("Banilla"), plaintiffs Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Plaintiffs") served multiple subpoenas on their competitor Banilla seeking documents and testimony on numerous irrelevant topics.  These topics range from games that Banilla did not create and that were never accused of infringement to communications with other non-parties to the underlying patent invalidity action pending in the U.S. District Court for the Middle District of Pennsylvania (the "Pennsylvania Action").  In response to each of the three document subpoenas Plaintiffs served, Banilla served timely objections and explained what Plaintiffs already knew:  Banilla has nothing to do with whether Plaintiff Savvy Dog Systems, LLC's U.S. Patent No. 7,736,223 (the "'223 patent") is valid, and has no relevant personal knowledge regarding the same.

Undeterred, Plaintiffs now claim they are not engaged in a fishing expedition of their competitor Banilla because they limited the admittedly facially overbroad and irrelevant topics in most recent document subpoena served (ECF No.[1] 7-1) (the "Document Subpoena").  But even so narrowed, the Document Subpoena—like the deposition subpoena served with it—still seeks largely irrelevant information that is more easily obtainable from parties to the litigation, and from other non-parties with personal knowledge of the relevant subjects from whom Plaintiffs have already obtained documents from and deposed.  Further, the narrowed subpoena is improper because it purports to require Banilla to conduct expert and legal analysis, all of which would not be admissible in the Pennsylvania Action.  Requiring Banilla to produce information in response

---

[1] All "ECF No." citations refer to the docket in the instant action unless otherwise noted.

to the subpoenas would be unduly burdensome and disproportionate to the needs of the underlying Pennsylvania Action. Accordingly, the Court should deny Plaintiffs' Motion to Compel.

## II. DESPITE BANILLA'S LACK OF RELEVANCE TO THE LITIGATION, PLAINTIFFS CONTINUE TO HARASS BANILLA WITH BURDENSOME DISCOVERY.

Banilla has nothing to do with the sole remaining issue in the Pennsylvania Action—whether the '223 patent is invalid. Banilla is not alleged to have been involved in the creation of the patent, of its subject matter, or of any prior art (*i.e.*, information that existed before the patent existed). The '223 patent and any prior art thereto was created years before Banilla even existed.

The Pennsylvania Action commenced in August 2019. At the outset of that Action, Plaintiffs served a first document subpoena on Banilla seeking information regarding products then accused of infringing the '223 patent. *See* Pennsylvania Action, ECF No. 47-1. After the Pennsylvania Court ruled on the construction of the '223 patent claim terms, Plaintiffs acknowledged that Banilla's products did not infringe. *See* Pennsylvania Action, ECF No. 116. Thus, the topics on which Plaintiffs originally sought discovery from Banilla—the formerly accused Banilla products—became irrelevant.

Undeterred, Plaintiffs continued to pursue discovery from Banilla as if though it were a party with relevant personal knowledge. Months after conceding that Banilla's products do infringe, Plaintiffs served a second subpoena on Banilla demanding information about those very same products. *See* Ex. 1, Plaintiffs' June 2021 Subpoena. When Banilla objected, on July 13, 2021, Plaintiffs served a third set of subpoenas—including the one at issue in Plaintiffs' Motion—demanding information on a variety of overbroad topics. *See* ECF No. 7-1. After Banilla moved to quash the deposition subpoena, Plaintiffs filed the current Motion, abandoning most of their topics and changing others. Plaintiffs claim that the revised topics from their July 13 subpoenas are "critical" to the Pennsylvania Action, but this is belied by the facts that Plaintiffs (1) waited

until six weeks before the August 30 fact discovery deadline to propound this discovery and (2) delayed filing their Motion until two weeks before the close of fact discovery in the Pennsylvania Action—over two weeks after Banilla served its objections and conferred with Plaintiffs.

With fact discovery now closed in the Pennsylvania Action (*see* Pennsylvania Action, ECF Nos. 124 & 148), Plaintiffs request that this Court compel Banilla to respond to supposedly "narrowed" discovery requests. The Court should reject Plaintiffs' latest effort to burden Banilla with discovery as these supposedly "narrowed" topics are still overbroad and unduly burdensome given the limited scope of the Pennsylvania Action.

## III. THIRD PARTY BANILLA SHOULD BE SHIELDED FROM IRRELEVANT, BURDENSOME, AND DISPROPORTIONATE DISCOVERY.

Plaintiffs have failed to comply with their affirmative obligations under Rule 45(d)(1) to "take reasonable steps to avoid imposing undue burden or expense" on Banilla. Fed. R. Civ. P. 45(d)(1). Indeed, all Plaintiffs have done is try to draw Banilla into the parties' dispute without any basis to do so. *Cf. Va. Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (third-party "should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery").

At the core of Plaintiffs' Motion to Compel is a misguided belief that Plaintiffs should be able to saddle non-party Banilla with the obligation of searching for documents and preparing a corporate designee in order to fish for statements made by parties other than Banilla—*i.e.*, admissions of Defendants (who Plaintiffs declined to depose) or hearsay statements of other non-parties. This argument is nonsensical. If Plaintiffs wanted to obtain admissions from Defendants, to discover Defendants' communications with Banilla, and to discover potential prior art that Defendants are aware of, then *Defendants* are the appropriate source for that information. If Plaintiffs want to discover statements made by other non-parties, then the appropriate discovery

target is those parties—particularly since any statement by those third parties in a Banilla document or in the testimony of a Banilla designee would be inadmissible hearsay at trial.

Plaintiffs argue that if there are not many responsive documents to a given request then it would not be burdensome to produce such documents or prepare a witness to testify regarding the same. Not so. It would be a significant burden to Banilla to even determine if such responsive documents even exist. *See* Declaration of Marc Downing, Ex. 2, ¶¶ 2-6. If compelled to search for and produce documents in response to the Document Subpoena, Banilla would need to conduct email searches of various employees, custodian interviews, and assemble attorneys to review documents hitting on search terms. *Id.*, ¶¶ 3-4. Depending on what is found, Banilla might need to prepare a privilege log. *Id.*, ¶ 5; *see also infra*, § III.B. The precise contours of expenses associated with this collection and review cannot be determined until Banilla needlessly expends resources conducting an investigation and searches in response to Plaintiffs' fishing expedition.[2] Plaintiffs also conveniently ignore that, even if Banilla has *no* non-privileged documents responsive to a topic, Plaintiffs are still demanding that Banilla prepare and produce a corporate designee to testify on topics corresponding to each document request as the deposition topics seek information beyond whether documents simply exist. This too would require significant Banilla employee and attorney time, including potential expert analysis. *Id.*, ¶ 7.

### A. Plaintiffs' Abandonment of Efforts to Obtain Party Discovery Forecloses the Relief Plaintiffs Seek With Respect to Topics 2 and 3.

Plaintiffs' *sole* justification for seeking discovery relating to Topics 2 and 3—communications between Banilla and Defendants regarding invalidity issues—is the speculative hope that Banilla's documents may contain admissions *of Defendants*. However, Plaintiffs already

---

[2] Given that Banilla has provided a declaration (Ex. 2) to describe the burden associated with searches and production, Plaintiffs' citation to cases criticizing unsupported burden claims (*see* ECF No. 7 at 7) is inapposite.

had a full opportunity to discover such information directly from Defendants, and, in fact, did serve document discovery requests on Defendants seeking, *inter alia*, Defendants' communications with Banilla about various subjects. *See* Ex. 3 (Plaintiffs' RFP Nos. 5, 6, & 87 to Defendants). Moreover, belying their claim that it is "critical" to discover Defendants' admissions,[3] Plaintiffs did not even depose the Defendants or their principals in the Pennsylvania Action during the fact discovery period. The absurdity of Plaintiffs' position is plain: they expect non-party Banilla to undertake the burden of searching for documents and preparing a designee to testify regarding Defendants' statements despite the fact that Plaintiffs themselves did not bother to depose Defendants about those statements.

Plaintiffs' failure to pursue discovery regarding these communications from Defendants reveals the true purpose of demanding this same information from non-party Banilla: to harass Banilla. The Federal Rules do not endorse such gamesmanship. Indeed, it is well-established that a party cannot use a subpoena to obtain material and testimony from a third party that can be obtained from a party to a litigation. *See, e.g.*, *Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests."); *Rice v. United States*, 164 F.R.D. 556, 558 (N.D. Okla. 1995) (party should not be allowed to use subpoena "to obtain materials from third parties that could have been produced during discovery"). As such, "numerous courts have quashed subpoenas issued to non-parties when the requesting parties could have obtained the documents from other parties." *See,*

---

[3] Further proof that Plaintiffs' justifications are pretext is that Topics 2 and 3, as revised, are not limited to *Defendants'* statements, but also encompass statements of non-party Banilla. Plaintiffs neither attempt to argue the relevance of such statements nor do they explain how the out-of-court statements of a non-party corporate designee, who would not have personal knowledge of the statements, would be anything other than inadmissible hearsay at trial in the Pennsylvania Action.

*e.g.*, *Tolliver v. Abuelo's Int'l, LP*, Civ. A. 2:20-cv-3790, 2021 WL 3188420, at *3 (S.D. Ohio July 28, 2021) (collecting cases); *Spring v. Bd. of Trustees of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at *1 (E.D.N.C. Aug. 8, 2016).

**B.  Plaintiffs' Conclusory Assertions Fail to Undermine that Documents Regarding Topics 2 and 3 are Protected by the Common Interest Privilege.**

Plaintiffs' cursory arguments regarding a supposed lack of common interest between Banilla and Defendants likewise fail to demonstrate Banilla should be compelled to provide discovery in response to Topics 2 and 3. Plaintiffs posit that "Banilla is no stranger to . . . Defendants[ ] or the Pennsylvania Action," ECF No. 7 at 3, yet Plaintiffs contend that there is no evidence Banilla and Defendants have a common legal interest. But Plaintiffs ignore the fact that Banilla and Plaintiffs both have sought to invalidate the '223 patent. Banilla did this in separate proceedings before the U.S. Patent and Trademark Office (*see* Pennsylvania Action, ECF No. 69-1), and Plaintiffs now seek to do so in the Pennsylvania Action. Moreover, Plaintiffs have threatened to enforce the '223 patent against Banilla. *See* Ex. D (ECF No. 2-4). Thus, both Banilla and Defendants have a common legal interest in invalidating the '223 patent such that discovery of communications between Defendants and Banilla (insofar as any such communications exist) are shielded from production under the common interest doctrine. *See Harris Corp. v. Fed. Express Corp.*, Case No. 6:07-cv-1819-Orl-28KRS, 2010 WL 11474447, at *2 (M.D. Fla. July 19, 2010) (party and non-party had "a common interest in invalidating [other party]'s patent"); *Generac Power Sys., Inc. v. Kohler Co.*, No. 11-CV-1120-JPS, 2012 WL 5463913, at *2 (E.D. Wisc. Nov. 8, 2012) (same).[4]

---

[4] The record is devoid of any evidence undermining that Defendants and Banilla had a meeting of the minds regarding a common legal interest in invalidating the '223 patent. To the contrary, Defendants told the Court in the Pennsylvania Action that they agreed to be bound by any grounds for invalidity of the '223 patent adjudicated in the separate action brought by Banilla before the

**C.      The Court Should Reject Plaintiffs' Efforts to Discover Inadmissible Hearsay Through Topics 6-8.**

Plaintiffs' arguments regarding Topics 6-8—communications with third-parties who may have contributed to the invention of the '223 patent—fare no better.  The only relevance Plaintiffs point to is that supposedly "Banilla may have information regarding" communications between Banilla and third parties "that the [third party] witnesses do not recall or have not maintained." ECF No. 7 at 10.  Even if Banilla were able to locate communications between itself and these third parties or could locate an employee who could recall any such communications, the out-of-court statements of these third parties would be inadmissible at trial as hearsay.[5]  Thus, there is no reason to force Banilla to endure the burden of searching for such communications, when Plaintiffs should get that information directly from the third parties with personal knowledge.[6]

Tellingly, Plaintiffs have not come forward with anything suggesting that any third party has forgotten or destroyed information that it provided to Banilla.  Thus, Topics 6-8 are nothing more than a fishing expedition for third party statements, one that Banilla should not need to endure given that there is no evidence (or even accusation) that these third parties forgot or destroyed anything.  Permitting a fishing expedition now is especially problematic given that fact discovery in the underlying Pennsylvania Action is now closed, and, thus, discovery would need to be re-

---

United States Patent Office.  *See* Pennsylvania Action, Defendants' Mot. to Stay, ECF No. 69, at 4.  This fact alone demonstrates a meeting of the minds.

[5] Likewise, to the extent these topics seek discovery of non-party Banilla's statements, Plaintiffs do not even attempt to argue the relevance of such statements nor how they could be admissible at trial.  *See supra*, note 3.

[6] Indeed, Plaintiffs deposed both Mr. Kowell (referenced in Topic 6) and Mr. Fiechter (Topic 7), so had full opportunity to discover the information for which they had personal knowledge. Plaintiffs did not even bother issuing discovery requests on Mr. Mayle, and Plaintiffs have not explained to this Court why Banilla should burdened with discovery about Mr. Mayle, when Mr. Mayle himself was no so burdened.

opened (and, presumably, the Pennsylvania Action delayed) to allow Plaintiffs to seek what would at most amount to discovery of inadmissible, duplicative hearsay evidence.

**D.      The Court Should Reject Plaintiffs' Efforts to Discover Irrelevant and Inadmissible Information in Response to Topics 10-11.**

Topics 10 and 12 seek documents and testimony relating to "*any* electronic amusement game system" having either a "Preview Display Feature" or a "Testing Feature"[7] "before July 1, 2006."  Plaintiffs do not argue that they need information from Banilla about particular game systems, and, in fact, the topics do not identify any such systems.  Nor do Plaintiffs suggest that they need information about any Banilla game system; nor could they, as Banilla did not exist before 2014.  In fact, Plaintiffs make plain they are not seeking discovery of information that Banilla *does* have.  Rather, Plaintiffs concede that they want to elicit statements that Banilla does *not* have information about game systems that existed before Banilla existed so Plaintiffs can introduce those statements at trial.  This is misguided and improper for a variety of reasons.

First, any statement by Banilla about what existed—or what Banilla is or is not aware of existing—before July 1, 2006 would be inadmissible at trial in the Pennsylvania Action.  A statement in a document by the employee or agent of non-party Banilla would be hearsay, and therefore inadmissible under Rule 802.  Likewise, the deposition testimony of a designee testifying on behalf of non-party Banilla would be inadmissible under Fed. R. Evid. 602.  By definition, the designee could not have personal knowledge of what every other person in the organization does or does not know.  *See Deutsch Shell Tanker GmbH v. Placid Refining Co.*, 993 F.2d 466, 473 n.29 (5th Cir. 1993) (affirming exclusion of "rank hearsay" testimony by 30(b)(6) designee about

---

[7] These "features" are defined in the relevant subpoenas by incorporating the specific phrases from the claims of the '223 patent.  *See, e.g.*, '223 patent at col. 12, ll. 61-62 ("testing the game field . . . ") and ll. 65-67 ("automatically displaying . . ."). Those phrases, and subparts thereof, were construed by the Court in the Pennsylvania Action.  *See* Pennsylvania Action, ECF No. 112, p. 2.

statements made by others); *Digene Corp. v. Ventana Med. Sys., Inc.*, 316 F. Supp. 2d 174, 181 n.10 (D. Del. 2004) (excluding 30(b)(6) deposition testimony regarding agreement as inadmissible hearsay because deponent had no personal, first-hand knowledge about its negotiation).

Second, Banilla's knowledge or lack thereof regarding prior art is irrelevant to the Pennsylvania Action. The invalidity of the '223 patent in the Pennsylvania Action will be adjudicated based on the prior art asserted by Defendants in their previously-served final invalidity contentions. *See* Pennsylvania Action, ECF No. 120. Defendants do not get to assert prior art they have not identified in the case—even if Banilla is aware of something else. On the other hand, if Banilla is not aware of prior art asserted by Defendants, the Defendants still get to assert it, and Banilla's lack of knowledge is not probative of the existence of that prior art one way or the other. Either way, Banilla's knowledge is wholly irrelevant.

Lastly, Plaintiffs' relevance argument is based on the incorrect premise that non-party Banilla has some obligation to conduct a search for third party prior art. There is no such obligation. *See generally Convolve, Inc. v. Dell, Inc.*, Case No. 3:11-mc-80071, 2011 WL 1766486, *2 (N.D. Cal. May 9, 2011) (emphasizing that "non-parties should not be burdened in discovery to the same extent as the litigants themselves" and granting motion to quash subpoena seeking alleged prior art from nonparty). Banilla is not a party to the Pennsylvania Action and has no obligation to provide invalidity contentions, as a party would. To provide information in response to these topics, Banilla would need to conduct legal and expert analysis to compare known game systems to the construed claims of the '223 patent. To impose such an obligation would be a significant burden. Banilla would need to conduct the same market research and analysis as if it were a party to a patent infringement proceeding in order to determine the universe of potential prior art to the '223 patent. Banilla should not be subject to this distraction or expense.

After all, it was up to the parties to the Pennsylvania Action—not a non-party like Banilla—to conduct research and identify potential prior art.

### E. The Court Should Not Compel Banilla to Provide Expert Testimony and Legal Analysis In Order To Respond to Topic 15.

Modified Topic 15—"whether you [Banilla] need a Preview Display feature and/or testing feature to compete in the market for electronic amusement games"—is a far cry from Plaintiffs' original Topic 15 ("The market for your electronic games including the competitors in such market."). The Court should reject this topic out of hand given this constitutes yet another new effort to harass Banilla regarding an entirely new line of inquiry.

Topic 15 likewise cannot withstand scrutiny because it is a contention topic directed to a non-party seeking to discover whether claimed features in the '223 patent are necessary to complete in the market. Locating documents responsive to this topic and preparing a witness to testify regarding the same would require Banilla to apply and interpret the Pennsylvania Court's claim construction and conduct legal and expert analysis. As a non-party, Banilla is not required to undertake the undue burden of conducting such analysis. *See generally Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) ("A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts" such as non-parties asked to provide legal analysis.) (citing Fed. R. Civ. P. 45 Advisory Cmt. Note (1991)).

Further, insofar as Topic 15 purports to have Banilla testify regarding what is necessary for other non-parties to compete in the market place, a Banilla representative would necessarily lack knowledge regarding this subject and there would be no basis for requiring Banilla to speculate on its competitors' needs.

## IV.    CONCLUSION

For those reasons, the Court should deny Plaintiffs' Motion to Compel with respect to the

Document Subpoena.

Respectfully submitted, this the 3rd day of September, 2021.

> */s/ Joseph A. Schouten*
> Joseph A. Schouten
> N.C. State Bar I.D. No.:  39430
> email:  jas@wardandsmith.com
> Christopher S. Edwards
> N.C. State Bar I.D. No.:  48385
> email:  csedwards@wardandsmith.com
> For the firm of
> Ward and Smith, P.A.
> Post Office Box 33009
> Raleigh, NC  27636-3009
> Telephone:  919.277.9100
> Facsimile:  919.277.9177
> *Attorneys for Banilla Games, Inc.*